UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOLEEN M. RILEY, )<br>)<br>       *Plaintiff* )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>**Commissioner of Social Security,** [1] )<br>)<br>       *Defendant* ) | *Docket No. 06-95-B-W* |

## *REPORT AND RECOMMENDED DECISION*[2]

This Supplemental Security Income ("SSI") appeal raises the question whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges disability stemming from major depressive disorder, bipolar disorder, social phobia, anxiety, borderline intellectual functioning and a lifting limitation, is capable of making an adjustment to work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be vacated and the case remanded for further proceedings.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), I have substituted new Commissioner of Social Security Michael J. Astrue as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 22, 2007, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

law judge found, in relevant part, that the plaintiff suffered from major depressive disorder, anxiety disorder and borderline intellectual functioning, impairments that were severe but did not meet or equal those listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Findings 2-3, Record at 15, 17; that she had no exertional limitations and retained the residual functional capacity ("RFC") to interact with co-workers and supervisors, perform routine, repetitive tasks, perform unskilled jobs with a specific vocational preparation code of two or less and occasionally interact with the general public, Finding 4, *id.* at 17; that, considering her age ("younger individual"), education (general equivalency diploma) and RFC, she could perform jobs existing in significant numbers in the national economy, Findings 6-7 & 9, *id.* at 19; and that she therefore had not been under a disability at any time through the date of decision, Finding 10, *id.* at 20.  The Appeals Council declined to review the decision, *id.* at 6-8, making it the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work.  20 C.F.R. § 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the

commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff asserts that the administrative law judge erred in (i) omitting to find that she had a severe back condition that imposed a restriction on her ability to lift, (ii) purporting to give the mental RFC assessments of three non-examining Disability Determination Services ("DDS") psychological consultants considerable weight but failing to do so, (iii) overlooking evidence that she received psychiatric treatment in 2004, (iv) mischaracterizing her global assessment of functioning ("GAF") scores as ranging from 55 to 70 when, in fact, the range for the relevant period was lower, (v) using the criteria in "paragraph B" of the listing of mental impairments to address functional limitations, (vi) relying on vocational-expert testimony flawed by the positing of an inaccurate RFC to the expert, (vii) relying on vocational-expert testimony flawed by unresolved inconsistencies with the Dictionary of Occupational Titles ("DOT"), and (viii) failing to address her request for reopening of a prior application. *See generally* Statement of Specific Errors ("Statement of Errors") (Docket No. 8). I agree with the plaintiff that the administrative law judge erred in relying on vocational testimony discrepant with the DOT and that his failure even to identify, let alone, resolve those conflicts warrants reversal and remand in this case. For the benefit of the parties on remand, I briefly discuss the plaintiff's remaining points of error, the majority of which have no merit or would not independently have warranted reversal and remand.

## I. Discussion

Social Security Ruling 00-4p ("SSR 00-4p") provides, in relevant part:

> In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy[.] Occupational evidence provided by a VE [vocational expert] or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable

3

>explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2006) at 244.

At the plaintiff's hearing, the administrative law judge asked a vocational expert whether any employment was available for a younger individual who (i) was limited to routine, repetitive tasks, (ii) was capable of occasional interaction with the public and (iii) had no limitations on interactions with co-workers and supervisors.  *See* Record at 944.  The vocational expert testified that such a person could perform the jobs of housekeeper in a nursing home, DOT § 323.687-014, veterinary-hospital worker, DOT § 418.677-010, and stores laborer, DOT § 922.687-014.  *See id.* at 944-46.

Invoking SSR 00-4p, the plaintiff contends that (i) all three of the jobs described by the vocational expert are inconsistent in certain respects with the job descriptions contained in the DOT citations he provided, (ii) the administrative law judge failed to address those inconsistencies, and, (iii) as a result, none of the vocational testimony can stand as substantial evidence of the Step 5 decision.  *See* Statement of Errors at 7-9.  Specifically, she asserts that (i) the DOT number provided for the job of a nursing-home housekeeper is for the job of cleaner, housekeeping position, and is performed in commercial establishments, (ii) the DOT number given for the job of veterinary-hospital worker is for the job of dog bather and requires, *inter alia*, level 3 reasoning skills and significant interaction with the public, and (iii) the DOT number given for the job of stores laborer is for a binder-wrapper packer, who packs tobacco leaves.  *See id*. at 8-9.

At oral argument, counsel for the commissioner conceded that the administrative law judge's reliance on the job of veterinary-hospital worker was misplaced.  However, she argued that he supportably relied on the vocational testimony as to the two remaining jobs, those of nursing-home

4

housekeeper and stores laborer, with respect to which the vocational expert unfortunately provided DOT citations that were off by three digits.  She represented that the correct DOT citation for stores laborer is DOT § 922.687-058 (laborer, stores) rather than DOT § 922.687-014 (binder-and-wrapper packer, tobacco industry), and the correct citation for nursing-home housekeeper is DOT § 323.687-010 (cleaner, hospital) rather than DOT § 323.687-014 (cleaner, housekeeping).  Alternatively, she argued that the DOT section cited for nursing-home housekeeper (DOT § 323.687-014) aligns closely enough with the job described by the vocational expert that the testimony as to that job can stand as substantial evidence on that basis.

As I informed the commissioner's counsel at oral argument, I am troubled that the commissioner not only relied on such sloppy vocational testimony in the first instance but also is attempting to correct it on appeal to this court.  It is the job of the administrative law judge – not a reviewing court – to check for such errors and inconsistencies and resolve them during the administrative appeal process.  *See, e.g.*, SSR 00-4p at 244 ("When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled."); *Mathews v. Weber,* 423 U.S. 261, 270 (1976) (observing that, under 42 U.S.C. § 405(g), "neither party may put any additional evidence before the district court").  The commissioner is hereby put on notice that, henceforth, corrections to vocational-expert testimony tendered for the first time on appeal to this court will not be considered.

That said, taking the corrected DOT citations into account in this instance does not help the commissioner.  Both the jobs of stores laborer and hospital cleaner are listed in the DOT as having a General Educational Development ("GED") reasoning level of 2, *see* DOT §§ 922.687-058, 323.687-010, which requires a worker to "[a]pply commonsense understanding to carry out detailed but

5

uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations[,]" Appendix C, § III to DOT. This court previously has held that a claimant limited to the performance of jobs entailing only simple instructions is incapable of performing such a job. *See Flagg v. Barnhart*, No. 04-45-B-W, 2004 WL 2677208, at *5 (D. Me. Nov. 24, 2004) (rec. dec., *aff'd* Dec. 14, 2004). The administrative law judge found the plaintiff limited to performance of "routine[,] repetitive tasks," Finding 4, Record at 17 – a finding that fairly can be said to correlate to a limitation to simple tasks in view of the Record evidence to which he gave "considerable weight" in reaching that conclusion, *see id.* at 18, 341 (finding by DDS non-examining consultant Peter G. Allen, Ph.D., that plaintiff "could understand & remember up to four-step tasks/instructions"), 413 (finding by DDS non-examining consultant Charles Rothstein, Ph.D., that plaintiff could "do 2-3 step tasks with simple verbal instructions"), 650 (finding by DDS non-examining consultant S. Hoch, Ph.D., that plaintiff was able to "understand + remember simple tasks"). The apparent unresolved material discrepancy between the testimony of the vocational expert and the DOT citations on which the commissioner now relies precludes affirmance of the administrative law judge's decision on the basis of the new citations.

Finally, I am unpersuaded that the vocational expert's citation at hearing to DOT § 323.687-014 (cleaner, housekeeping) is close enough to the job about which he was actually testifying (nursing-home housekeeper) that the administrative law judge supportably relied on it without checking for or reconciling any conflicts with the DOT. The commissioner himself has acknowledged, via counsel at oral argument, that the vocational expert gave the wrong citation. Moreover, the old and new citations are for two distinguishable jobs. One, for instance, is performed in a hospital, has a strength level of medium work and a GED reasoning level of 2, *see* DOT § 323.687-010, and the other is performed in

6

commercial establishments, has a strength level of light work and a GED reasoning level of 1, *see id*. § 323.687-014.

For all of the foregoing reasons, the administrative law judge's finding that the plaintiff was capable of performing other work existing in significant numbers in the national economy (namely, the veterinary-hospital-worker, nursing-home-cleaner and stores-laborer jobs) is unsupported by substantial evidence of Record, necessitating reversal and remand of this case.

For the benefit of the parties on remand, I briefly consider the plaintiff's remaining points of error:

1.  <u>Physical RFC/Lifting Restriction</u>.  The administrative law judge found that the plaintiff had no physical restrictions, stating, *inter alia*:

> While [the plaintiff] underwent chiropractic manipulation for back pain in 2002 and 2004, the evidence of record fails to document that [she] has ever sought, required, or received alternate treatment modalities, or that she is being prescribed narcotic pain medications for her allegedly disabling pain.  As of December, 2002, chiropractor Matthew E. Pulley[] did not feel that [she] was prevented from performing work activities.  Based on his examination of the [plaintiff] in January, 2003, consultative examiner David Axelman, M.D., found that she had no limitations in her ability to sit, bend, carry, handle objects, hear, speak, or travel.

Record at 16 (citations omitted).  The plaintiff faults the administrative law judge for ignoring portions of the Pulley and Axelman reports that, in her view, support a finding of a lifting restriction. *See* Statement of Errors at 1-2.  She points out that: (i) in a report dated December 9, 2002, Dr. Pulley stated that he "would not recommend [that the plaintiff] do any job that may require heavy or prolonged lifting or carrying[,]" and (ii) in a second report dated April 27, 2004, Dr. Pulley wrote that "if [the plaintiff] were able to take frequent rest breaks to do stretching exercises and if the lifting and carrying were limited to 10 to 15 pounds, she should be able to perform some minimal job duties[.]" *Id*. at 2 (quoting Record at 495-96).  She also notes that Dr. Axelman stated: "[L]ifting may be limited because of her back and knees to 30 pounds." *Id*. (quoting Record at 318).

7

Nonetheless, as the administrative law judge suggested both in his decision and during the plaintiff's hearing, objective evidence that the plaintiff's scoliosis imposed a lifting restriction was scant. *See* Record at 16, 897-901. The Record contains no progress notes, x-rays or other findings from Dr. Pulley corroborating such a restriction. Dr. Axelman's findings were equivocal; he merely stated that the plaintiff's lifting capacity might be limited. *See id.* at 318. Moreover, James H. Hall, M.D., a DDS non-examining consultant whose notes indicate he had the benefit of both the Pulley and Axelman reports, found neither a severe physical impairment nor physical restrictions of any kind. *See id*. at 659. At hearing, the administrative law judge pointedly asked the plaintiff's representative whether it was necessary to send the plaintiff for a further physical consultative examination; the representative replied that it was not. *See id*. at 900-01. In these circumstances, the administrative law judge committed no error in determining that the plaintiff had fallen short of proving the existence of a back impairment that imposed lifting (or other) restrictions.

2.   <u>Mental RFC/DDS Opinions</u>. The plaintiff next faults the administrative law judge for failing to acknowledge or assess functional limitations found by Drs. Allen, Rothstein and Hoch despite having purportedly given those reports "considerable weight." *See* Statement of Errors at 3-4; Record at 18. She concludes: "There is no evidence in the record to support the ALJ's RFC. No State Agency psychologist or treating practitioner has formulated an RFC, or elements of an RFC, that supports the RFC arrived at by the ALJ." Statement of Errors at 6.

The material that the plaintiff identifies as having been ignored is contained in section I of the Social Security Administration's mental RFC ("MRFC") form, titled "Summary Conclusions." *Compare id.* at 3-4 *with* Record at 339-40, 411-12, 648-49. Per the Social Security Administration Program Operation Manual System ("POMS"), a consultant's MRFC opinion is not set forth in section I of the MRFC form – which contains a series of checkboxes intended as a worksheet – but rather in

8

section III, titled "Functional Capacity Assessment." *See* POMS § DI 24510.060(B)(2)(a) & (4)(a), *available at* https://s044a90.ssa.gov/apps10/ ("Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment. . . .  Section III – Functional Capacity Assessment, is for recording the mental RFC determination.  It is in this section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings.") (boldface omitted).

When one compares the administrative law judge's MRFC assessment with those of Drs. Allen, Rothstein and Hoch as articulated in section III of the MRFC form, it is apparent that he did indeed give their findings considerable weight and that his assessment is consistent with theirs. *Compare* Finding 4, Record at 17 (plaintiff retained RFC to interact with co-workers and supervisors, perform routine, repetitive tasks, perform unskilled jobs with a specific vocational preparation code of two or less and occasionally interact with the general public) *with id*. at 341 (assessment by Dr. Allen that plaintiff retained RFC to understand and remember up to four-step tasks and instructions, concentrate sufficiently for simple tasks and manage a normal workday and workweek, interact appropriately in a small group of co-workers and supervisors and less well with the general public, adapt to minor changes at work and make simple plans), 413 (assessment by Dr. Rothstein that plaintiff retained RFC to do two- to three-step tasks with simple verbal instructions and focus, persist and concentrate on such tasks, although she needed to avoid complexity, that the plaintiff's social skills were intact, although she related better to known individuals, and that she could adapt to simple verbal changes and make routine plans), 650 (assessment by Dr. Hoch that plaintiff retained RFC to understand and remember simple tasks, attend to routine tasks for two- to three-hour blocks of time

9

and complete a normal workday and workweek, interact in a logical and coherent manner and respond appropriately to others and adapt to routine changes).[3]

Beyond this, the plaintiff herself testified at hearing that, in a normal work environment, and provided she did not have a "mean" boss, she could get along well with co-workers and supervisors, and that if her environment were not noisy, she probably could do routine, repetitive tasks. *See id*. at 911-12.

The administrative law judge's MRFC finding, which was consistent with those of all three DDS consultants and the testimony of the plaintiff herself, was supported by substantial evidence.

3. <u>Mental RFC/2004 Psychiatric Treatment</u>. The plaintiff next complains that, in stating that it was "unclear what, if any, formal psychiatric treatment [she] received during calendar year 2004[,]" the administrative law judge failed to consider evidence that she received mental-health treatment during that year from Takeo Kawamura, M.D., and Community Health & Counseling Services ("CHCS"). *See* Statement of Errors at 4 (quoting Record at 16). One cannot be certain what the administrative law judge meant by "formal psychiatric treatment"; however, he seemingly was aware of the plaintiff's mental-health treatment in 2004 with Dr. Kawamura and CHCS, having cited to those records, among others. *See* Record at 16 (citing, *inter alia*, Exhibits 13F, 17F); *see also id*. at 497-513 (portion of Exhibit 13F containing mental-health treatment notes from Dr. Kawamura's office for period from February 18, 2004 through June 10, 2004), 723-27 (portion of Exhibit 17F

---

[3] At oral argument, the plaintiff's counsel acknowledged that the administrative law judge's MRFC finding was "not inconsistent" with the section III findings of Drs. Allen, Rothstein and Hoch; however, he argued that the section III findings themselves were incomplete inasmuch as they omitted discussion of a number of the section I findings of moderate limitations. In the absence of specific examples of such asserted omissions, I am unwilling to assume – contrary to the assumptions of the POMS – that Drs. Allen, Rothstein and Hoch provided incomplete MRFC assessments in section III. *See, e.g*., POMS §§ DI 24510.065(B)(1)(a) (directing consultants, *inter alia*, to "[d]escribe, in detail [in section III of MRFC form], the mental capacities, limitations, and any other information that is important in the comprehensive expression of mental RFC") (boldface omitted), DI 24510.063(B)(2) (instructing consultants to check the box "moderately limited" in section I of MRFC form "when the evidence supports the conclusion that the individual's capacity to perform the activity is impaired"; noting, "The degree and extent of the capacity or limitation must be described in narrative format in Section III.") (boldface omitted).

10

containing CHCS mental-health treatment notes from November 2004). In any event, any error in overlooking these records was harmless inasmuch as the administrative law judge transmitted to the vocational expert an MRFC consistent with those of Drs. Allen, Rothstein and Hoch and with testimony of the plaintiff herself.[4]

    4.  <u>Mental RFC/GAF Scores</u>. The plaintiff next challenges the administrative law judge's characterization of her GAF scores as having "generally ranged from 55 through 70, indicating only mild to moderate limitations in [her] ability to function." Statement of Errors at 4-5 (quoting Record at 17). She notes that when one canvasses her GAF scores from the time of her amended alleged date of onset of disability (September 13, 2002) forward, her scores, with one exception, ranged from 35 to 55, indicative of severe to moderate impairment in social and occupational functioning. *See id.* at 5; Record at 107 (initial alleged onset date of January 7, 2001), 149 (amended alleged onset date of September 13, 2002).[5] While it does indeed appear that the administrative law judge overlooked the plaintiff's amendment of her alleged onset date, as a result of which he took into consideration GAF scores from a period she no longer claimed to have been disabled, the error, standing alone, is harmless. As noted above, the administrative law judge transmitted to the vocational expert an MRFC consistent with those of Drs. Allen, Rothstein and Hoch and with the testimony of the plaintiff herself.

---

[4] In addition, Dr. Hoch's notes indicate that he factored in records of the plaintiff's mental-health treatment in 2004. *See* Record at 646.

[5] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR"). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A score of 61 to 70 reflects "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* (boldface omitted). A score of 31 to 40 reflects "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *Id.* (boldface omitted).

11

5.      <u>Mental RFC/Use of "Paragraph B" Criteria</u>.  The plaintiff next argues that the administrative law judge misused the "paragraph B" criteria (which are intended to be used at Steps 2 and 3 of the sequential-evaluation process) to craft an MRFC (at Steps 4 and 5).  *See* Statement of Errors at 5-6.  This plaint is without merit.  The administrative law judge properly employed the "paragraph B" criteria at Steps 2 and 3 to assess the severity of the plaintiff's mental impairment, concluding that she had severe impairments based on his rating of (i) mild restrictions in activities of daily living, (ii) moderate difficulties in maintaining social functioning, (iii) moderate limitations in maintaining concentration, persistence or pace and (iv) lack of evidence of episodes of decompensation at work or in a work-like setting.  *See* Record at 15-17.  He then went on at Steps 4 and 5 to determine the plaintiff's MRFC, relying heavily on the MRFC opinions of Drs. Allen, Rothstein and Hoch.  *See id*. at 17-18.

6.      <u>Reopening of Prior Application</u>.  The plaintiff complains that although she requested that a prior application be reopened, and the administrative law judge noted that such an application "may" be reopened, he failed to issue a ruling on that request.  *See* Statement of Errors at 9; Record at 13, 149.  While indeed it is not clear from the administrative law judge's discussion that he granted that request, counsel for the commissioner acknowledged at oral argument that he had.

7.      <u>Preservation of Amended Alleged Onset Date</u>.  The plaintiff finally observes (correctly) that although she amended her alleged onset date to September 13, 2002, the administrative law judge overlooked the amendment, describing medical treatment in September 2001 as having occurred approximately eight months after the alleged onset date.  *See* Statement of Errors at 9; Record at 16, 149.  She asks that her amended alleged onset date be preserved for purposes of remand.  *See* Statement of Errors at 9-10.  This request is entirely reasonable.  Should the court agree that remand is warranted, the commissioner should ensure that the correct date is used.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings not inconsistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 27th day of March, 2007.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge